UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, et al.,

Plaintiffs,

v.

1850 BRYANT LAND LLC, et al.,

Defendants.

Case No. 21-cv-05742-RS

**ORDER GRANTING MOTIONS TO DISMISS AND DENYING MOTION FOR SANCTIONS**

## I. INTRODUCTION

This suit avers dishonest dealings in a local development project. In the operative First Amended Complaint ("FAC"), *qui tam* Relator Leiasa Beckham describes a fraudulent scheme under which two development companies and their employees worked in concert with the City and County of San Francisco and its associated community investment fund to induce nonprofits to apply for government grants based on false premises. These actions, Beckham argues, violated the federal False Claims Act ("FCA") and its California analogue. Pending here are two motions to dismiss (brought by two different groups of defendants) and a motion for Rule 11 sanctions against Beckham.

These motions are suitable for disposition without oral argument. *See* Civ. L.R. 7-1(b). For the reasons discussed below, the motions to dismiss are granted, with leave to amend, and the motion for sanctions is denied without prejudice.

## II. BACKGROUND[1]

This case centers around an aborted development project involving a number of parties. The eponymous 1850 Bryant Land LLC, managed by Defendants Christopher Paul Foley and Douglas Ross (collectively, "1850 Bryant"), owned the commercial property located at 1850 Bryant Street in San Francisco. During or before 2015, 1850 Bryant, along with Kaslofsky & Associates LLC and Defendant Thurston Kaslofsky (collectively, "Kaslofsky"), reached a "secret 'backroom' agreement," with the City and County of San Francisco, the San Francisco Community Investment Fund ("SFCIF"), and then–City Administrator and SFCIF officer Naomi Kelly (collectively "the City"), to orchestrate a bait-and-switch. Dkt. 21 ("FAC") ¶ 14. The City and 1850 Bryant wanted to use the property as a "Single-Use City Facility," but they knew this proposal would not garner support from the local community, as required by the San Francisco Planning Commission's approval process. To overcome this obstacle, Defendants all agreed to seek community approval by misrepresenting that the property would be developed into a "Nonprofit Multi-Tenant Center, business condominiums of which were to be purchased and occupied by nonprofit organizations that provided services to the local community." *Id.* ¶ 13. After gaining Planning Commission (and community) approval, Defendants could then scrap the plan, obtain an "administrative variance" obviating the need for renewed community approval, and carry on with their ultimate plan to lease 1850 Bryant to the City.[2] *Id.* at 2.

With this scheme concocted, Defendants approached local nonprofit organizations, including (among others) Mission Neighborhood Centers, Goodwill, and the San Francisco Conservation Corps, to induce them to apply for federal and state grants to purchase business

---

[1] This section is based on the averments in the FAC, which must be taken as true for purposes of the motion to dismiss, and documents of which the Court may take judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Defendants have requested judicial notice of a state court action previously filed by Relator regarding the same alleged misconduct. The requests are granted insofar as the Court notices the fact that the lawsuit was filed, although this fact does not bear on the disposition of the present motions.

[2] The City allegedly would also "sell[], or provid[e] an option to purchase," a different city-owned property to 1850 Bryant. FAC ¶ 21.

1   condominiums at 1850 Bryant. This would help secure Planning Commission approval by

2   demonstrating the project's financial feasibility. Relator believes these grant funds "amounted to

3   more than $100 million." *Id.* ¶ 23. 1850 Bryant and Kaslofsky formally applied to the Planning

4   Commission for a permit to develop the Nonprofit Multi-Tenant Center in 2015, while SFCIF later

5   told the nonprofits it would be awarding $20 million to 1850 Bryant for the project.

6       Relator assisted several nonprofits in applying for the relevant grants, and she brought this

7   suit under the federal FCA, 31 U.S.C. § 3729(a)(1), and the analogous California False Claims Act

8   ("CFCA"), CAL. GOV'T CODE § 12651(a), in July 2021. The United States and the State of

9   California declined to intervene in May 2022, *see* Dkt. 1, after which Relator amended her

10  complaint, *see* Dkt. 13. The two claims for relief are effectively identical, and they assert that

11  Defendants (1) knowingly caused false or fraudulent claims for payment to be presented; (2)

12  knowingly caused to be made false records or statements material to false or fraudulent claims for

13  payment; (3) knowingly caused to be made false records or statements material to an obligation to

14  pay the government(s); and (4) conspired to commit these violations. Relator seeks treble

15  damages, statutory penalties, relator's awards, and attorney fees. 1850 Bryant and the City each

16  separately moved to dismiss the FAC; Kaslofsky joined both motions. Finally, 1850 Bryant filed a

17  Rule 11 motion for sanctions under the Federal Rules of Civil Procedure, arguing Relator has

18  made false allegations in the FAC and that her counsel failed to conduct a reasonable inquiry as to

19  the basis of these false allegations.

## III. MOTIONS TO DISMISS

### A. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) governs motions to dismiss for failure to state a claim. A complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations" are not required, a complaint must have sufficient factual allegations to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)). When evaluating such a motion, courts generally "accept all factual allegations

in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Knievel v. ESPN*, 393 F.3d 1068, 1072 (9th Cir. 2005). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

For actions sounding in fraud, the complaint "must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). This includes claims brought under the FCA and CFCA. *See Cafasso, United States ex rel. v. General Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054–55 (9th Cir. 2011). Such averments "must be accompanied by 'the who, what, when, where, and how' of the misconduct charged," such that they are "specific enough to give defendants notice of the particular misconduct." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (first quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003); and then quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)). Knowledge may be pleaded generally under Rule 9(b), but the complaint "must set out sufficient factual matter from which a defendant's knowledge of a fraud might reasonably be inferred." *United States ex rel. Silingo v. WellPoint, Inc.*, 904 F.3d 667, 679–80 (9th Cir. 2018).

### B.  FCA & CFCA Claims

Ninth Circuit and California courts apply the same analysis to FCA and CFCA claims that are "substantially identical." *See United States v. Safran Group*, No. 15-CV-00746-LHK, 2017 WL 235197, at *4 (N.D. Cal. Jan. 19, 2017). To prevail on such a claim under either statute, a Relator must show "(1) a false statement or fraudulent course of conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay out money or forfeit moneys due." *United States ex rel. Hendow v. Univ. of Phoenix*, 461 F.3d 1166, 1174 (9th Cir. 2006). While the archetypical FCA case is that of an insider blowing the whistle on a fraud perpetrated against the government, the "scope of false or fraudulent claims should be broadly construed." *Id.* at 1170; *see also Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 995–96 (9th Cir. 2010) ("outsider" permitted to proceed with FCA claim). Thus, for instance, "a person need not be the one who actually submitted the claim forms [to the government] in order to be liable." *United States v.*

*Mackby*, 261 F.3d 821, 827 (9th Cir. 2001). Further, the government need not have actually paid out the claim: "the [FCA] attaches liability, not to the underlying fraudulent activity or the government's wrongful payment, but to the 'claim for payment.'" *Cafasso*, 637 F.3d at 1055 (quoting *United States v. Rivera*, 55 F.3d 703, 709 (1st Cir. 1995)).

**C. Discussion**

As framed in the City's motion, "[t]he thrust of Relator's claims is that no Defendant disclosed the purportedly 'real' plan for 1850 Bryant's development." Dkt. 37, at 8. Relator thus argues that, while Defendants did not submit false claims with the intent to receive federal and/or state funds directly, the FCA and CFCA have been violated because Defendants induced nonprofits to apply for government grants based on the false promise of the Nonprofit Multi-Tenant Center. While this theory may be viable in the abstract, Relator has failed to plead it with the requisite specificity to avoid dismissal under Rule 9(b)'s heightened pleading standard.

The Ninth Circuit has repeatedly emphasized that FCA claims must provide more than "broad and conclusory allegations." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016); *see also Ebeid,* 616 F.3d at 1000; *Bly-Magee*, 236 F.3d at 1018. This standard serves,

> not only to give notice to defendants of the specific fraudulent conduct against which they must defend, but also "to deter the filing of complaints as a pretext for the discovery of unknown wrongs, to protect [defendants] from the harm that comes from being subject to fraud charges, and to prohibit plaintiffs from unilaterally imposing upon the court, the parties and society enormous social and economic costs absent some factual basis."

*Bly-Magee*, 236 F.3d at 1018 (alteration in original) (quoting *In re Stac Elec. Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). Here, the FAC reveals "some details of a generalized scheme," but not nearly enough to satisfy Rule 9(b)'s requirements. *United Healthcare Ins. Co.*, 848 F.3d at 1182. For instance, at no point does Relator describe who in particular within the Defendant organizations discussed executing the averred scheme, or when the "secret backroom agreement" was formed: the only details of its formation are contained in a single, conclusory sentence. *See* FAC ¶ 14. Relator similarly fails to describe what statements were contained within the grant

1   applications; when, in particular, such grants were submitted, or for how much; or even when the

2   allegedly bogus Nonprofit Multi-Tenant Center plan was halted. Further, Relator frequently

3   conflates the roles of the various Defendants, thus failing to "identify the role of each defendant in

4   the alleged fraudulent scheme," *United Healthcare Ins. Co.*, 848 F.3d at 1184, such that each can

5   "defend against the charge and not just deny that they have done anything wrong," *id.* at 1180

6   (quoting *Bly-Magee*, 236 F.3d at 1019).

7   While Relator is not required to describe each and every false claim, Rule 9(b) requires a

8   more fulsome showing than the one proffered here. *See Ebeid*, 616 F.3d at 999. The fact that

9   Relator is an outsider to the Defendant organizations may well make it more difficult for her to

10  obtain some of this information, but the particularity requirement applies nonetheless. *See id.*

11  (rejecting a relaxed pleading standard for outsiders). The motions to dismiss are therefore granted,

12  with leave to amend.[3]

### IV. MOTION FOR SANCTIONS

1850 Bryant moves for sanctions against Relator under Rule 11(c) of the Federal Rules of Civil Procedure, on the grounds that Relator's claims are "objectively baseless" and that "[n]o reasonable attorney could have believed that [Relator's] allegations were well-founded given the conclusory, speculative nature of this suit." Dkt. 56, at 5. The motion is supported by declarations from several of the nonprofit organizations discussed in the FAC, which generally contradict Relator's averments that they received government funding in connection with the project. *See* Dkts. 56-2, 56-3, 56-4 (declarations from officers of Muttville, Mission Neighborhood Centers, and Goodwill). While these materials tend seriously to undermine Relator's contentions, sanctions are not appropriate at this juncture. It remains to be seen whether Relator can furnish additional

---

[3] The City, in its motion, argues the CFCA claim should be dismissed without leave to amend as to Naomi Kelly because, as a public official in her official capacity, she is not a proper defendant under the CFCA as a matter of law. *See* Dkt. 37, at 13. Relator responds that, as an officer of SFCIF, a nonprofit organization, Kelly is a proper defendant. *See* Dkt. 50, at 15–16. Kelly's specific role in the alleged scheme is just one of the many clarifications Relator would need to make in an amended complaint in order to proceed with this action.

facts to satisfy Rule 9(b)'s heightened pleading requirement; if so, the claims could not fairly be called "baseless." Further, the fact that none of the three nonprofits ultimately *received* government funding does not address the conduct proscribed by the FCA and CFCA — that is, making false *claims* for payment. The motion is therefore denied, without prejudice.

## V. CONCLUSION

The motions to dismiss are granted, with leave to amend. Any amended complaint must be filed within 21 days of the entry of this Order. The motion for sanctions is denied, without prejudice.

**IT IS SO ORDERED**.

Dated: January 9, 2023

_____
RICHARD SEEBORG
Chief United States District Judge