DAVID CHIU, State Bar #189542
City Attorney
THOMAS S. LAKRITZ, State Bar #161234
MIGUEL A. GRADILLA, State Bar #304125
KARUN TILAK, State Bar #323939
Deputy City Attorneys
City Hall, Room 234
1 Dr. Carlton B. Goodlett Place
San Francisco, California 94102-4682
Telephone:    (415) 554-3870 (Gradilla)
              (415) 355-3308 (Tilak)
Facsimile:    (415) 554-4699
E-mail:       miguel.gradilla@sfcityatty.org
              karun.tilak@sfcityatty.org

Attorneys for Defendants
SAN FRANCISCO COMMUNITY INVESTMENT FUND,
CITY AND COUNTY OF SAN FRANCISCO, and NAOMI KELLY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, *ex rel.* LEIASA BECKHAM, and STATE OF CALIFORNIA, ex rel. LEIASA BECKHAM,<br><br>Plaintiffs,<br><br>vs.<br><br>1850 BRYANT LAND LLC, KASLOFSKY & ASSOCIATES LLC, THURSTON KASLOFSKY, CHRISTOPHER PAUL FOLEY, DOUGLAS ROSS, SAN FRANCISCO COMMUNITY INVESTMENT FUND, CITY AND COUNTY OF SAN FRANCISCO, and NAOMI KELLY,<br><br>Defendants. | Case No. 3:21-cv-05742-RS<br><br>**JOINT CASE MANAGEMENT STATEMENT**<br><br>Hearing Date:  January 16, 2025<br>Time:          10:00 a.m.<br>Before:        Honorable Richard Seeborg<br>Place:         450 Golden Gate Avenue<br>               Courtroom 3 – 17th Floor<br>               San Francisco, CA 94102<br><br>Trial Date:    None set. |

Pursuant to Local Rules 16-9 and 16-10 and this Court's Standing Order, Plaintiff LEIASA BECKHAM, Co-Defendants SAN FRANCISCO COMMUNITY INVESTMENT FUND, CITY AND COUNTY OF SAN FRANCISCO, and NAOMI KELLY ( herein "the City"), and Co-Defendants 1850 BRYANT LAND LLC, CHRISTOPHER PAUL FOLEY AND DOUGLAS ROSS (herein "1850 Bryant") and Co-Defendants KASLOFSKY & ASSOCIATES LLC and THURSTON KASLOFSKY (herein "Kaslofsky") hereby submit this Joint Case Management Statement.

### 1.  Status of the Case

<u>Plaintiff's Statement</u>: Plaintiff Leiasa Beckham brings this action as a *qui tam* relator on behalf of the United States (Government) and the State of California (California) under the Federal False Claims Act, 31 U.S.C. § 3729, et seq. and the California False Claims Act, Cal. Govt. Code § 12651, et seq., respectively.

Defendants 1850 Bryant Land LLC, Kaslofsky & Associates LLC, Thurston Kaslofsky, Christopher Paul Foley, and Douglas Ross entered into a secret "Backroom Deal" with defendants City and County of San Francisco (CCSF), San Francisco Community Investment Fund (SFCIF), and Naomi Kelly, among others, in which the former defendants would develop and lease or sell the real property located at 1850 Bryant Street, San Francisco, California (Subject Property) to defendant CCSF as a Single-Use City Facility, a portion of which San Francisco would lease to the University of California at San Francisco (UCSF). However, Defendants knew that the Subject Property did not have local community support needed for the development of the Subject Property for such purpose which was necessary for the San Francisco Planning Commission's permitting approval of the development as a Single-Use City Facility.

Defendants devised a scheme to obtain community support for the development of the Subject Property by fraudulently representing to the local community and nonprofit organizations that the Subject Property would be developed as a Nonprofit Multi-Tenant Center project, of which condominiums would be sold to various nonprofit organizations to serve the local community, when in fact Defendants knew that Defendants 1850 Bryant Land LLC, Kaslofsky & Associates LLC, Thurston Kaslofsky, Christopher Paul Foley, and Douglas Ross had no intention of selling such condominiums to the nonprofit organizations. Defendants made such false misrepresentations to gain

community support for the development of the building, which was necessary for the San Francisco Planning Commission's permitting approval of the development. After the Planning Commission approved the development of the building as a Nonprofit Multi-Tenant Center project with the local community's support, Defendants' scheme was to refuse to proceed with the sale of the condominiums to the nonprofit organizations, and to instead seek an administrative variance (without the need for a public hearing or local community support) from the San Francisco Planning Department to permit approval of the development as a Single-Use City Facility and proceed with their plans to lease or sell the building to San Francisco as a Single-Use City Facility, a portion of which was to be leased to UCSF (which does not constitute a Nonprofit Multi-Tenant Center project). Defendants intended and knew that their fraudulent scheme would result, and did result, in the nonprofit organizations applying for and obtaining grant funds originating from the United States (Government) and California based upon the nonprofit organizations believing that they would purchase business condominiums at the Subject Property. As part of Defendants' scheme, Defendants used the approval of such grants to the nonprofit organizations in seeking the Planning Commission's approval of the Subject Property's development as a Nonprofit Multi-Tenant Center project.

In violation of the Federal and California False Claims Acts, Defendants' frauds resulted in the application for, and award of, millions of dollars in grant funds originating from the Government and/or California to the nonprofit organizations which were based upon such nonprofit organizationssupposedly purchasing business condominiums at the Subject Property as a Nonprofit Multi-Tenant Center project.

<u>Defendants' Statement</u>: Defendants Christopher Paul Foley and Douglas Ross formed Defendant 1850 Bryant Land LLC ("1850 Bryant") in 2015 for the purposes of developing the property located a 1850 Bryant Street, San Francisco, California 94110 ("Subject Property"). In or around May 2016, 1850 Bryant retained Common Ground Urban Development, run by Defendant Thurston "Thor" Kafslofsky and Plaintiff Leiasa Beckham, as consultant for the development process.

1850 Bryant initially sought to develop the Subject Property as a Family and Social Services Center primarily focused on selling condominium units to various non-profit social service agencies. Common Ground, Defendant Kaslofsky, and Plaintiff Beckham were also involved in these efforts. In

late 2017, however, 1850 Bryant terminated its consulting agreement with Common Ground, and subsequently hired Defendant Kaslofsky & Associates LLC as a consultant.

Ultimately, the plan to sell condominium units to non-profits fell through due to the lack of requisite financing and tenant commitments for the project. The developers then approached various departments of Defendant the City and County of San Francisco ("CCSF") to see if CCSF agencies involved in providing services to vulnerable populations, such as the Human Services Agency, would be interested in purchasing or leasing space in the Subject Property either alongside nonprofits that serrved those populations or exclusively for use by CCSF departments. At no time was there a "backroom deal" between the Defendants, as alleged by Plaintiff, that the project would be purchased or leased by CCSF. CCSF ultimately decided not to pursue the project.

Defendant San Francisco Community Investment Fund ("SFCIF") is a non-profit public benefits corporation affiliated with, but legaly distinct from, the City and County of San Francisco ("CCSF"). SFCIF is a community development entity that uses New Market Tax Credits ("NMTCs") to help fund community-oriented developments in San Francisco. In connection with the development of the Subject Property, 1850 Bryant and Common Ground applied for NMTCs for the development in 2016. Ultimately, no NMTCs were awarded to the project when it was determined in 2018 that the project would not be moving forward as originally planned. Defendant Naomi Kelly was, during the relevant time period, the City Administrator for CCSF and a Board member of SFCIF. At no time were Defendants SFCIF or Kelly part of any alleged "backroom deal" for the Subject Property to be purchased or leased by CCSF.

Since the Initial Case Management Conference on November 16, 2023, Defendants have diligently sought discovery from Plaintiff and from third parties. In January 2024, Defendants issued subpoenas to the seven non-parties identified in Plaintiff's operative Third Amended Complaint ("TAC") as having received federal or state grants. Defendants have received most of the responsive documents. In April 2024, Defendants issued interrogatories and document requests to Plaintiff. However, as discussed below, there are significant deficiencies in Plaintiff's document productions which will likely require Plaintiff to reproduce most (if not all) of her responsive documents. Defendants sent Plaintiff a meet and confer letter outlining the various deficiencies in Plaintiff's

production in August 2024, but have not yet received a substantive response. Plaintiff has not sought any discovery to date.

On August 19, 2024, the Parties appeared for an initial settlement conference before Chief Magistrate Judge Ryu. The initial settlement conference was not productive. Judge Ryu subsequently issued an order requiring Plaintiff to file a supplemental settlement brief providing specific citations to evidence by September 13, 2024. As discussed below, that deadline has been vacated and needs to be reset.

On September 12, 2024, Plaintiff's then counsel William Hamagami informed Defendants that he would be seeking to withdraw from representation. The Court ultimately granted Plaintiff's counsel's motion to withdraw on November 15, 2024. In that order, the Court also vacated the deadlines set in in the Initial Case Management Scheduling Order and Judge Ryu's scheduling order. New counsel for Plaintiff entered their appearance on December 2, 2024. Defendants' counsel met and conferred with Plaintiff's new counsel on December 23, 2024 and were informed that they were still getting up to speed.

As such, since September 2024, this case has essentially been stayed. The parties have been unable to make any progress on discovery (despite the fact that there are significant outstanding issues with Plaintiff's production) or obtain critical information to assess the prospects of settlement. Now that Plaintiff has found replacement counsel, Defendants are committed to moving the case forward expeditiously, and have proposed a case schedule below that aligns with that goal.

**2.     Legal Issues**

Plaintiffs' Statement: Plaintiff intends to establish that the defendants violated the Federal False Claims Act, 31 U.S.C. § 3729, et seq. and the California False Claims Act, Cal. Govt. Code § 12651, et seq., by fraudulently inducing at least seven (7) nonprofit entities to apply for and/or obtain federal and/or California funded grants to purchase business condominiums at the 1850 Bryant Nonprofit Multi-Tenant Center project, which the 1850 Bryant defendants (pursuant to their Backroom Deal with the other defendants) had no intention of building. Plaintiff intends to determine and establish the existence and terms of defendants' Backroom Deal, the acts and omissions performed pursuant thereto, the damages to the Government and California, and the civil

penalties assessable against the defendants under 31 U.S.C. § 3729(a)(1) and Cal. Govt. Code § 12651(a) for each false record, statemen, claim and/or concealment in violation of the Federal and California False Claims Acts.

<u>Defendants' Statement</u>:  Defendants intend to dispute whether Plaintiff has satisfied any of the elements of a claim under the federal and California False Claims Acts, see United States ex rel. Hendow v. Univ. of Phoenix, 461 F.3d 1166, 1174 (9th Cir. 2006) (enumerating elements):

    a.    Whether Plaintiff has identified any false statement contained in any application for a grant related to the 1850 Bryant Street development, or any fraudulent conduct in connection with a claim for payment.   See United States ex rel. Cafasso v. General Dynamics C4 Systems Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) ("[T]he [FCA] attaches liability, not to the underlying fraudulent activity or to the government's wrongful payment, but to the 'claim for payment,'" and "an actual false claim is 'the sine qua non of a[n FCA] violation'") (cleaned up).

    b.    Whether any Defendant acted with the requisite "scienter"—i.e., whether any Defendant acted with "actual knowledge," "deliberate ignorance," or "reckless disregard" of the falsity of the information, see 31 U.S.C. § 3729(b)(1)(A), Cal. Gov. Code § 12650(b)(2), rather than "innocent mistake[]" or "mere negligence," United States ex rel. Hagood v. Sonoma Cty. Water Agency, 929 F.2d 1416, 1421 (9th Cir. 1991).  In addition, to the extent Plaintiff alleges a conspiracy between Defendants' to violate the FCA, Plaintiff must demonstrate that Defendants "agreed to make use of a false record or statement for the purpose of getting the government to pay a claim."  (Calisesi ex rel. United States v. Hot Chalk, Inc., No. CV–13–01150–PHX–NVW, 2015 WL 1966463, at *13 (D. Ariz. May 1, 2015)

    c.    Whether any false statements were "material" to the state or federal government's decision to pay because they had a "natural tendency to influence, or be capable of influencing, the payment or receipt of money or property," id. § 3729(b)(4), including consideration of "(1) the Government's decision to expressly identify a provision as a condition of payment; (2) whether the Government consistently refuses to pay claims in the mine run of cases based on noncompliance with the particular statutory, regulatory, or contractual requirement or if, with actual knowledge of the non-compliance, it consistently pays such claims and there is no indication that its practice will

change; and (3) whether the noncompliance is minor or insubstantial or if it goes to the very essence of the bargain." United States ex rel. Osinek v. Permanente Medical Group, Inc., No. 21-cv-03894-EMC, 2022 WL 16925963, at *6 (N.D. Cal. Nov. 14, 2022).

    d. Whether any false statements caused the government "to pay out money or forfeit money due." Hendow, 461 F.3d at 1174.

### 3. Discovery

Plaintiff's Statement: Defendants served requests for production of documents and other written discovery on Relator's previous counsel, and Relator responded to the requests, including, producing tens of thousands of documents. Defendant propounded a meet and confer letter dated August 24, 2024, raising various issues regarding Relator's production of documents. Relator has retained new Counsel after her previous attorneys moved to withdraw, and new counsel are focusing on discovery and other aspects of the case requiring attention. While their review and analysis of Defendants' concerns is not yet complete, some issues, including bates numbering and organization of the Relator's production have merit and need substantial additional work. While new counsel believes the production itself is complete, the production may need to be renumbered and reallocated to the specific requests in Defendants' Request for Production. Due to the large number of documents involved, what Defendants acknowledge is complex discovery in this matter, and Counsel's need to become familiar with the case, and more specifically, Relator's document production, this work will take some time.

The exact scope of Plaintiff's further discovery efforts has not yet been ascertained, but Plaintiff expects co propound written discovery, including interrogatories and requests for production, and to take the depositions of individual defendants as well as corporate PMQ persons through 30(b)(b6) depositions. Plaintiff also intends to engage in third party discovery, including twritten subpoenas and oral depositions.

Defendants' Statement: As discussed above, Defendants have engaged in significant party and non-party discovery.

    a. *Third Party Discovery*: Defendants have issued document subpoenas to each of the non-profits identified in the TAC as having received federal or state grants related to

          the 1850 Bryant Street property development. Each of the nonprofits has produced records. Defendants do not anticipate seeking significant additional document discovery from the non-profits, although they may depose representatives of these nonprofits. Defendants reserve the right to seek discovery from federal or state agencies alleged to have awarded grants related to the 1850 Bryant Street property development.

      b. *Party Discovery*: Defendants served interrogatories and document requests on Plaintiff on April 1, 2024. Yet, to date, Plaintiff's document productions remain substantially deficient. In brief, Plaintiff appears to have produced large swathes of nonresponsive and duplicative records, produced documents with inconsistent or missing Bates numbering, and produced documents in formats inconsistent with the parties' ESI order. Defendants were in the process of initiating the meet and confer process with Plaintiff's former counsel before they withdrew. As such, Defendants believe that there are still significant document productions from Plaintiff that remain outstanding. Defendants also intend to take depositions, including that of Plaintiff.

### 4. Settlement and ADR

Plaintiff's Statement: Relator has engaged new counsel after her first attorney's moved to withdraw. Prior to new counsel assuming representation, the parties engaged in a settlement conference with Magistrate Judge Donna M. Ryu. On August 19, 2024 Magistrate Judge Ryu directed Relator's Counsel to supplement her settlement Papers with additional evidence. This directive was not completed before the change in counsel for Relator. New counsel expect to comply with Magistrate Judge Ryu's direction as soon as practical, however Counsel believes this cannot be realistically done before the discovery issues regarding Relator's Responses to Defendants' Requests for Production are resolved, as one of those issues concerns the bates numbering of Relator's production of tens of thousands of pages of documents, and some of these documents will be responsive to Magistrate Judge Ryu's order. Counsel believes that piecemeal numbering and production of a small universe of a much larger production, as Defendants suggest, will be confusing, lead to duplicate work, and is not a productive endeavor. Defendants' argument that Relator should be

able to accomplish limited number after four years does not acknowledge that Relators new counsel have been counsel in the matter for just over one month; While Counsel has agreed to a discussion of the possibility of compliance with Magistrate Judge Ryu's order on January 31, 2025, but, as of now, counsel believes compliance on that early date is unrealistic considering the tens of thousands of documents in the production.

<u>Defendants' Statement</u>: As discussed above, the parties had an initial settlement conference before Chief Magistrate Judge Ryu, after which she ordered Plaintiff to produce a supplemental settlement brief with certain supporting citations. The deadline to produce that supplemental brief has been vacated because of the withdrawal of Plaintiff's former counsel. Defendants believe that obtaining the supplemental settlement brief is essential to determining whether further settlement discussions will be fruitful. Defendants disagree with Plaintiff that the supplemental settlement brief can only be produced after the outstanding discovery issues are resolved. After nearly four years of litigating this case—as well as prior state court litigation—Plaintiff should be able to identify and correctly Bates stamp the limited set of key documents needed for the supplemental settlement brief before re-producing the rest of the deficient production. Defendants intend to request that Magistrate Judge Ryu reset Plaintiff's deadline to serve the supplemental settlement brief to January 31, 2025.

### 5. Scheduling

<u>Plaintiff's Statement</u>: The Relator's new counsel requires more time to get fully acquainted with the case, including what Defendants acknowledge is complex discovery, and Magistrate Judge Ryu's direction regarding supplementing the Relator's settlement papers. While not interested in undue delay, Relator's new counsel objects to being jammed by Defendants' rushed proposed schedule when they have just assumed responsibility for a complex case with numerous parties and witnesses, and tens of thousands of documents in just the Relator's document production. We need to point out that while Counsel repeatedly asserts that the case has been ongoing for four years, they do not similarly point out that much of that time was consumed with Defendants multiple Rule 12 motions, the last of which the court rejected. The false stay Defendants assert has no relationship to prior counsel leaving and new counsel assuming representation, when prior counsel had years to become familiar with the case in all of its complexities, and new counsel have had just over one

month. Any attempt by Defendants to take advantage of new attorneys' need for adequate time to become familiar with a complex case will be resisted. Additionally, Counsel has four trials set between now and May 2025, and one of the attorneys on Relators two lawyer law firm (there are seven counsel on the Defendants' teams) has two major surgeries coming in the nextthree months.

Defendants' Statement:  This case effectively been stayed for a roughly three-month period between September 12, 2024 (when Plaintiff's former counsel informed Defendants he would be withdrawing) and December 2, 2024 (when new counsel entered their appearance).  Defendants believe that the case deadlines in this case should therefore be extended by approximately 90 days from the (now vacated) deadlines set in the Initial Case Management Scheduling Order.  Such an extension will allow Plaintiff's counsel time to get up to speed and permit the parties to complete discovery and move this case towards dispositive motions.

Plaintiff's proposed schedule, in contrast, seeks to push case deadlines out by approximately *eight months*.  Such an extended delay is unwarranted given the nearly four years this case has been pending, and would be prejudicial to Defendants.  Plaintiff provides no adequate explanation for why they need eight months to get up to speed, resolve Defendants' outstanding fact discovery disputes, and move towards expert discovery and dispositive motions.  Further, Plaintiff should not be afforded an extra eight months to belatedly seek discovery that she has failed to seek for over a year.

Defendants also oppose Plaintiff's request that the Court reset the deadline to amend the pleadings.  The deadline to amend the pleadings expired on May 13, 2024, before Plaintiff's prior counsel withdrew.  It is inappropriate to give new counsel a second bite at the apple where Plaintif's prior counsel made the strategic decision not to amend.  Allowing further amendment nearly four years into the litigation would prejudice Defendants, who have engaged in discovery over the last year in reliance on the allegations in the operative Third Amended Complaint.  Moreover, Plaintiff has previously amended her complaint three times—once on her own volition and twice in reponse to motions to dismiss.

The chart below lays out each side's proposal.

| Event | Initial Scheduling Order | Plaintiff's Proposal | Defendants' Proposal |
|---|---|---|---|
| **Deadline to Amend Pleadings** | 5/13/24 | 5/12/25 | As stated above, Defendants' do not believe that this deadline should be reset. |
| **Close of Fact Discovery** | 1/10/25 | 9/2/25 | 4/10/25 |
| **Disclosure of Experts** | 1/31/25 | 9/29/25 | 5/1/25 |
| **Disclosure of Supplemental/Rebuttal Experts** | 2/21/25 | 10/20/25 | 5/22/25 |
| **Close of Expert Discovery** | 3/14/25 | 11/17/25 | 6/12/25 |
| **Summary Judgment Motions** | 4/18/25 | 12/22/25 | 7/11/2025 |
| **Summary Judgment Oppositions** | 5/19/25 | 2/2/26 | 8/18/25 |
| **Summary Judgment Replies** | 6/2/25 | 2/23/26 | 9/8/25 |
| **Summary Judgment Hearing** | 7/10/25 | 3/11/26 | 10/8/25 |
| **Pretrial Conference** | 8/27/25 | 4/27/26 | 11/19/25 |
| **Trial Date** | 9/8/25 | 5/25/26 | 12/8/25 |

| | |
|---|---|
| Dated:  January 9, 2025 | DAVID CHIU<br>City Attorney<br>THOMAS S. LAKRITZ<br>MIGUEL A. GRADILLA<br>KARUN TILAK<br>Deputy City Attorneys<br><br>By: */s/Karun Tilak*<br>      KARUN TILAK<br>Attorneys for Defendants<br>SAN FRANCISCO COMMUNITY<br>INVESTMENT FUND, CITY AND COUNTY<br>OF SAN FRANCISCO, and NAOMI KELLY |
| Dated:  January 9, 2025 | SEVERSON & WERSON<br><br>By:  */s/Andrew S. Elliott*<br>      ANDREW S. ELLIOTT<br>ELIZABETH C. FARRELL<br>Attorneys for Defendants 1850 BRYANT LAND LLC, CHRISTOPHER PAUL FOLEY AND DOUGLAS ROSS |
| Dated:  January 9, 2025 | JACKSON LAW GROUP, P.C.<br><br>By:  */s/Aaron R. Jackson*<br>      AARON R. JACKSON<br>Attorneys for Defendants KASLOFSKY & ASSOCIATES LLC and THURSTON KASLOFSKY |
| Dated:  January 9, 2025 | GEONETTA & FRUCHT, LLP<br><br>By:  */s/Frederick J. Geonetta*<br>      FREDERICK J. GEONETTA<br>KENNETH N. FRUCHT<br>Attorneys for Plaintiff LEIASA BECKHAM |

# CIVIL L.R. 5-1(h)(3) ATTESTATION

I, Karun Tilak, attest that each of the other signatories have concurred in the filing of this document, which shall serve in lieu of their own signatures on the document.

Dated: January 9, 2025

DAVID CHIU
City Attorney
THOMAS S. LAKRITZ
MIGUEL A. GRADILLA
KARUN TILAK

By: */s/Karun Tilak*

KARUN TILAK
Attorneys for Defendants
SAN FRANCISCO COMMUNITY INVESTMENT FUND, CITY AND COUNTY OF SAN FRANCISCO, and NAOMI KELLY